IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-mj-186 |
| | ) | |
| DAVID POTTER, | ) | |
| | ) | |
| Defendant. | ) | |

FILED APR 19 2019 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARRREST WARRANT

I, Jeffrey A. Fuller, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (the "FBI") and have been so employed for the last 14 years. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).

2. Since May 2016, I have been assigned to the FBI's office at Washington Dulles International Airport ("Dulles Airport"), which is located in Loudoun County, Virginia, within the Eastern District of Virginia. There, I primarily investigate violations of federal law that occur within the airport or onboard aircraft.

3. This affidavit is submitted in support of a criminal complaint and arrest warrant charging DAVID POTTER with interference with flight crew members and attendants, in violation of 49 U.S.C. § 46504.

4. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation and information obtained from other law enforcement officers. All observations not personally made by me were relayed to me by the individuals who made

them or are based on my review of reports, documents, and other physical evidence obtained during the course of this investigation.

5. This affidavit contains information necessary to support probable cause and has been prepared only for the purpose of obtaining a criminal complaint and arrest warrant. Therefore, it contains neither all of the information known to me concerning the offense nor every fact learned by the government during the course of its investigation thus far.

## SPECIAL AIRCRAFT JURISDICTION

6. It is unlawful for an individual on an aircraft in the special aircraft jurisdiction of the United States to, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interfere with the performance of the duties of the member or attendant or lessen the ability of the member or attendant to perform those duties, or to attempt to do the same. *See* 49 U.S.C. § 46504.

7. The special aircraft jurisdiction of the United States includes a civil aircraft of the United States while it is in flight. *See id.* § 46501(2)(A).

8. A "civil aircraft of the United States" is an aircraft, like those operated by common carriers, that is registered under chapter 441 of Title 49 of the United States Code. *See id.* § 40102(a)(17).

9. An aircraft is "in flight" from the moment when all external doors are closed following boarding until the moment when one external door is opened to allow passengers to disembark. *See id.* § 46501(1)(A).

**FACTUAL BASIS SUPPORTING PROBABLE CAUSE**

10. On April 17, 2019, the defendant, DAVID POTTER, a citizen of England traveling on a British passport, was a passenger on United Airlines flight #5, which was intended to fly nonstop from Houston, Texas, to London, England. P.W. was the captain of the flight.

11. According to a report filed by P.W., approximately one hour and thirty minutes into the flight, the pilots were informed by the senior flight attendant, F.M., that the passenger in seat 29J, POTTER, was causing a disturbance in the cabin.

12. At some point thereafter, F.M. told the pilots that POTTER, who appeared to be intoxicated, had been verbally abusive toward him and other flight attendants. P.W. advised F.M. to ask another flight attendant to attempt to calm POTTER down. At this point, the pilots began preparing for the possibility that they would have to divert the aircraft, a process that includes identifying an airport at which the aircraft could land if need be, coordinating with air traffic controllers on the ground, and communicating with United Airlines dispatchers, all of which takes time and distracts the pilots from their primary job of flying the aircraft.

13. Thereafter, F.M. called back to confirm POTTER's abusive behavior, at which point P.W. declared a Level 1 security threat.

14. Some amount of time later F.M. again called back, stating that POTTER's behavior was not improving and that another passenger sitting next to POTTER had been moved because POTTER was touching her. POTTER's behavior was alarming enough that the flight crew solicited able-bodied passengers to standby in the event that their assistance in subduing POTTER were to become necessary.

15. Eventually, it was determined that the flight needed to be diverted to Dulles Airport. Because the aircraft would be landing far earlier than planned, it was too heavy to land

safely without jettisoning some of its fuel. Accordingly, the aircraft dumped approximately 6,000 pounds of fuel before landing at Dulles Airport at approximately 12:00 a.m. on April 18, 2019.

16. The aircraft was met by officers from the Metropolitan Washington Airports Authority Police Department (the "MWAA") and U.S. Customs and Border Protection. As POTTER was being escorted from the aircraft, he was visibly upset and yelling at members of the flight crew. An MWAA officer detected a strong odor of alcohol emanating from POTTER who, the officer reported, could not walk without assistance on account of his level of intoxication. The same officer spoke briefly with members of the flight crew who said that POTTER had become irate when his seat assignment was not upgraded. The flight crew members further said that POTTER was belligerent and abusive and refused to follow their commands.

17. POTTER was placed under arrest for public intoxication. He was taken to the Loudoun County Adult Detention Center where he was ordered held until sober.

18. Approximately one hour after it landed, and after refueling, United Airlines flight #5 took off, resuming its trip to London.

19. On April 18, 2019, after having regained his sobriety, POTTER waived his *Miranda* rights, both orally and in writing, and consented to an interview during which I asked him what he had had to drink the night before. Although POTTER did not think that he had caused a disturbance on the flight, and despite denying that he touched any female passengers, he admitted that he had consumed four margaritas before boarding and imbibed two more drinks onboard the aircraft.

20. I have been informed by United Airlines' corporate security division that POTTER will be banned for life from flying with United Airlines.

## CONCLUSION

21. Based on the foregoing, there is probable cause to believe that on or about April 17, 2019, the defendant, DAVID POTTER, on an aircraft in the special aircraft jurisdiction of the United States—namely, United Airlines flight #5, which was en route to London, England, from Houston, Texas, but which was diverted to Washington Dulles International Airport in Loudoun County, Virginia, within the Eastern District of Virginia—did knowingly interfere and attempt to interfere with the performance of the duties of the aircraft's flight attendants, including F.M., and lessen the flight attendants' ability to perform their duties as flight attendants, by intimidating, disrupting, verbally abusing, and willfully ignoring the lawful commands of the flight attendants, as well as by engaging in the inappropriate touching of another passenger, in violation of 49 U.S.C. § 46504.

Jeffrey A. Fuller
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 19th day April, 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

5